UNITED STATES DISTRICT COURT
EASTERN DISTICT OF MICHIGAN
SOUTHERN DIVISION

CONNYE L.[1],

                Plaintiff,        Civil Action No.: 24-12828

v.                                     David R. Grand[2]
                                           United States Magistrate Judge

COMMISSIONER OF,
SOCIAL SECURITY,

                Defendant.
_____/

**OPINION AND ORDER ON CROSS-MOTIONS**
**FOR SUMMARY JUDGMENT (ECF Nos. 10, 12)**

Connye L. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions and consented to the undersigned as presider pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73.

For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Plaintiff is not disabled under the

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to claimants only by their first names and last initials.

[2] The parties have consented to the undersigned exercising jurisdiction over all proceedings in this civil action pursuant to 28 U.S.C. § 636(c). (ECF No. 6).

Act.  Accordingly, the Court will **GRANT** the Commissioner's Motion for Summary Judgment **(ECF No. 12)** and **DENY** Plaintiff's Motion for Summary Judgment **(ECF No. 10)**.

## II.     REPORT

### A.     Background

Plaintiff was 51 years old at the time of her application on September 8, 2021, and at 5'8" tall weighed between 240 and 287 pounds during the relevant period.  (PageID.68, 336, 454, 477, 512, 533, 555, 558).[3]  She completed high school and one year of college.  (PageID.336).  She was an administrative associate at a hospital and a security guard prior to the alleged onset of disability.  (ECF No. 98, 337).  She now alleges disability resulting from "constant back pain, neuropathy in both feet and hands. Also pain in lower legs, thighs and hips."  (PageID.347).

After Plaintiff's application for SSI was denied at the initial level on April 26, 2022 and on reconsideration on November 28, 2022 (PageID.68), she timely requested an administrative hearing, which was held on July 20, 2023, before ALJ Margaret O'Donnell. (PageID.90).  Plaintiff, who was represented by attorney Rafi Issagholian, testified at the hearing, as did vocational expert ("VE") Stephanie Lynch.  (PageID.90-102).  In a written decision dated October 4, 2023, the ALJ found that Plaintiff is not disabled under the Act.  (PageID.68-83).  On August 29, 2024, the Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner for purposes of this review.

---

[3] Standalone citations to "PageID.___" are all to the administrative transcript in this case, which can be found at ECF No. 7-1.

(PageID.17).  Plaintiff filed for judicial review of the final decision on October 27, 2024. (ECF No. 1).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, disability reports, and testimony as to her conditions and resulting limitations.  Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

      **B.**      **The ALJ's Application of the Disability Framework Analysis**

Under the Act, SSI is available only for those who have a "disability."  *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  The Act defines "disability" in relevant part as the:

> [I]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A).  The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively

3

> presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, No. 11-10593, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. § 404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Following the five-step sequential analysis, the ALJ found that Plaintiff was not disabled under the Act. At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since September 8, 2021, her alleged onset date. (PageID.70). At Step Two, the ALJ found that Plaintiff has the following severe impairments: "degenerative disc disease; osteoarthritis; fibromyalgia; diabetes mellitus type II with neuropathy; obesity; depression; and anxiety." (PageID.71). At Step Three, the ALJ found that Plaintiff's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (PageID.71-74).

The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), concluding,

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except can stand and/or walk 4 hours

> of an 8-hour workday; can occasionally climb, balance, stoop, kneel, crouch, and crawl; must avoid concentrated exposure to extreme cold and to vibration; no work at unprotected heights or on slippery or uneven terrain; never operate foot controls bilaterally; is able to understand, remember, and carry out simple instructions and timely complete simple, routine tasks.

(PageID.74).

At Step Four, the ALJ determined that, at all relevant times, Plaintiff has been unable to perform her past relevant work. (PageID.81). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Plaintiff can perform a significant number of jobs that exist in the national economy. (PageID.82). As a result, the ALJ concluded that Plaintiff is not disabled under the Act. (PageID.83).

The Court has thoroughly reviewed the transcript in this matter, including Plaintiff's medical record, function and disability reports, and testimony as to her conditions and resulting limitations. Instead of summarizing that information here, the Court will make references and provide citations to the transcript as necessary in its discussion of the parties' arguments.

### C. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted). The

phrase "substantial evidence" is a "term of art …." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Id*. (internal citations omitted). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is 'more than a mere scintilla.'" *Id.* (internal citations omitted). Specifically, "[i]t means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (internal citations omitted).

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health &*

6

*Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted).

### D. Analysis

In her motion for summary judgment, Plaintiff essentially argues that the RFC was internally inconsistent in a manner that requires remand:

> The ALJ's description of the medical evidence clearly indicated that her primary concern was accommodating Ms. Lovin's limitations in performing activities with her feet or while on her feet[.]
>
> Yet, the ALJ suggested that Ms. Lovin had the RFC for light work, as defined in 20 C.F.R. § 416.967(b). That complied with her maximum ability to lift and carry, but also meant Ms. Lovin must be capable of frequently lifting or carrying objects weighing up to 10 pounds. 20 C.F.R. § 416.967(b). According to the Agency, frequent lifting and carrying involves "being on one's feet for up to two-thirds of the workday." See SSR 83-10, 1983 WL 31251, *5-6; see also SSR 83-14, 1983 WL 31254, *4. Therefore, the lifting and carrying in occupations at the light exertional level can require being on one's feet for over 5 hours in an 8-hour workday. See SSR 83-10, 1983 WL 31251, *5-6. But the ALJ conversely found that Ms. Lovin could not stand and walk for more than 4 hours in an 8-hour workday[.]
>
> The primary difference between work at the sedentary level and most light work is the amount of walking or standing required. SSR 83-10, 1983 WL 31251, *5-6. Sedentary work involves sitting with occasional standing and walking. See 20 C.F.R. § 416.967(a). The standing and walking limitation found in the RFC would interfere with Ms. Lovin's ability to perform the lifting and carrying required of work at the light exertional level . . .

(ECF No. 10, PageID.702).

Thus, Plaintiff argues that based on the ALJ's findings in the RFC she should have been limited to sedentary work rather than light work with additional limitations. (ECF No. 10, PageID.702). Plaintiff asserts that the issue is dipositive because, if the ALJ had limited Plaintiff to sedentary work rather than light work, she would have been classified

7

as disabled according to the grid rules, due to her age and education level. (ECF No. 10, PageID.703); 20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e)(2). For the reasons explained below, the Court agrees with the Commissioner that Plaintiff errs by essentially "mix[ing] the minimum requirements needed to perform *all* light work with the ability to do *some* light work," and that the ALJ's analysis is supported by substantial evidence in the record. (ECF No. 12, PageID.719) (quoting *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 48 (6th Cir. 2018) (emphasis original)).

In relevant part, the ALJ found that Plaintiff "has the residual functional capacity to perform **light work** as defined by 20 C.F.R. 416.967(b) **except** can **stand and/or walk 4 hours of an 8-hour workday**." (PageID.74) (emphasis added). The Sixth Circuit has held that an individual who is limited to standing and walking for four hours in an eight-hour workday falls "somewhere between the sedentary and light work categories." *Blackburn v. Comm'r of Soc. Sec.*, 748 F. App'x 45, 48 (6th Cir. 2018). In other words, the mere fact that a claimant is limited to standing and walking for four hours in a day does not mean the ALJ must find she is limited to sedentary work. Rather, as explained in *Blackburn*, when a claimant "can work on her feet for four hours a day, [she] falls in the middle between the requirements for *all* sedentary work (two hours) and *all* light work (six hours)." *Blackburn*, 748 F. App'x at 48 (emphasis in original).

To determine where "in the middle" the claimant's work abilities fall, the regulations direct the ALJ to consult with a vocational expert who possesses the "specialized knowledge" to make an informed decision about what jobs the claimant can perform. *Id*. ("[N]ot all individuals fall into single categories. Sometimes a claimant falls

8

between two 'ranges of work,' such as when someone 'can perform more than light but less than medium work,' [20 C.F.R. § 404.1545], subpt. P, app. 2 § 200.00(d), making the individual potentially eligible in one direction but not the other. For these in-between situations, the grids provide all they can—general guidance—and an administrative law judge consults vocational experts with 'specialized knowledge' to make an informed decision about what jobs a claimant can do. SSR 83-12, 1983 WL 31253, at *2–3 (Feb. 26, 1979)."). The ALJ did exactly that here, as she asked the VE whether a person with Plaintiff's RFC – including the ability to "perform light work, except can stand and/or walk only four of eight hours . . ." could perform any occupations in the national economy. (PageID.110-111). The VE testified in the affirmative, finding that there would be "a reduced range" of three "light classification, unskilled work" jobs, including routing clerk (70,000 jobs), office helper (7,500 jobs), and furniture rental clerk (25,000 jobs). (*Id.*). In reaching her final decision, the ALJ expressly credited the VE's testimony in finding that Plaintiff was not disabled because, with her vocational profile and RFC, she could perform several "jobs that exist in significant numbers in the national economy." (PageID.82-83). Thus, the ALJ's decision in this regard followed the regulations and does not warrant remand.

Plaintiff also argues that "[t]he Agency's Program Operations Manual System (POMS) DI 25025.015(D) addresses this precise situation. Under Agency policy, use of the grid rule directing a finding of non-disability is required where the claimant has only 'a slightly reduced capacity for the higher level of exertion.' POMS DI 25025.015(D). By contrast, use of the grid rule directing a finding of disability is required where the claimant

has 'a significantly reduced capacity for the higher level of exertion.' *Id.* The question therefore becomes whether Ms. Lovin's RFC was slightly reduced or significantly reduced from the higher level of exertion." (ECF No. 10, PageID.703) (footnote omitted). This argument lacks merit.

As explained in *Duffy v. Saul*, No. 18-CV-12342-DJC, 2020 WL 871576, at *7 (D. Mass. Feb. 21, 2020):

> [t]his section of POMS [] does not address every possible situation when a claimant's capacity falls between rules. *See Esping v. Berryhill*, No. 17-872 FLN, 2018 WL 3383433, at *7 (D. Minn. July 11, 2018).[4] The regulations offer more guidance for the ALJ when a claimant's RFC falls between light and sedentary work by stating that there may be a slight reduction in the exertional level, a significant reduction in the exertional level or an exertional capacity that falls in the middle of the ranges. SSR 83-12, 1983 WL 31253, at *2-3. POMS § DI 25025.015(D) does not provide guidance where a claimant's RFC falls somewhere in the middle of the ranges. *See Sankhar v. Colvin*, No. 03:14-cv-01644-HZ, 2015 WL 5664285, at *7 (D. Or. Sept. 21, 2015) (finding that the ALJ did not err in applying POMS § DI 25025.015 because she consulted a VE when the claimant's RFC placed him in the middle of two levels of exertion). When a case falls in the middle of the ranges, the regulations advise that a vocational expert be called to determine the extent of the impact on the occupational base to aid the ALJ in assessing whether the claimant should be found disabled. SSR 83-12, 1983 WL 31253, at *3; *Esping*, 2018 WL 3383433, at *7.

*Duffy*, 2020 WL 871576, at *7 (footnote added).

As discussed above, the ALJ here appropriately consulted the VE on these matters,

---

[4] *Esping* explains, "POM DI 25025.015(D) does not address the situation when a claimant's reduced capacity is neither slightly reduced, nor significantly reduced, but somewhere in the middle, as in this case. [] [Claimant's] limitations are consistent with both light work (lifting more than 20 pounds), and sedentary work (standing and/or walking 2 hours in an 8-hour work day), putting [his] exertional capacity somewhere in the middle. [] In this situation, POMS DI 25025.015(D) does not provide guidance to the ALJ." *Esping*, 2018 WL 3383433, at *7.

providing her with a detailed hypothetical RFC, and then crediting her testimony that a person with that RFC could perform the three identified positions. (PageID.82-83, 110-111). That is all that was required of the ALJ. *See* <u>Viera v. Comm'r of Soc. Sec.</u>, No. CV 18-13476, 2019 WL 8750418, at *8 (E.D. Mich. Oct. 25, 2019), <u>report and recommendation adopted,</u> No. 18-13476, 2020 WL 1443445 (E.D. Mich. Mar. 25, 2020).

Finally, the ALJ's analysis of the record evidence is supported by substantial evidence . Plaintiff lists several medical conditions that were discussed by the ALJ to argue that those conditions, as described by the ALJ, support a sedentary work capacity. Plaintiff writes:

> The ALJ stated that the RFC would account for [Plaintiff]'s lower extremities. [] It would also accommodate her previously unaddressed obesity, that was documented throughout the record, and account for her "significant levels of pain" related to fibromyalgia syndrome. [] The ALJ also intended to -accommodate [Plaintiff]'s "demonstrated difficulty walking on her heels and with tandem gait on exam." [] The ALJ's description of the medical evidence clearly indicated that her primary concern was accommodating [Plaintiff]'s limitations in performing activities with her feet or while on her feet.

(ECF No. 10, PageID.701) (citing PageID.74-81) (internal citations omitted). Considering the above limitations, Plaintiff argues that the ALJ doesn't explain "why the RFC, which was intended to accommodate Ms. Lovin's significant limitations in standing, walking, or being on her feet, was characterized as light rather than sedentary." (ECF No. 13, PageID.731). Further, Plaintiff argues that the ALJ should not have classified her as able to do light work. However, as discussed below, the Court finds that the ALJ reasonably explained her findings, and that substantial evidence supports the RFC.

Plaintiff is correct that the ALJ recognized her worsening neuropathy, but she fails

11

to recognize that the ALJ expressly added limitations specific to that condition in the context of all the medical evidence. (PageID.76) ("This impairment warrants reduced standing/walking . . ."). At the hearing, Plaintiff raised the issue of her worsening neuropathy, which was causing her to be unbalanced. She testified, "I have numbness from the knee down and I am getting unbalanced pretty long. My balance isn't – is not good." (PageID.104). Plaintiff also told the ALJ that she does not "yet" use an assistive device such as a "cane, walker, crutches, or wheelchair," but had fallen twice. (*Id.*). In the decision, however, the ALJ reasonably found that Plaintiff's "reports of balance issues and falling in the past year do not have good support in medical findings…" (PageID.77). The ALJ pointed to a medical exam on April 9, 2022, where the examining physician, Dr. Angela Joseph ("Dr. Joseph"), found that Plaintiff did not need an assistive device for walking or standing, and described Plaintiff's gait as "slow but normal." (*Id.*; PageID.514). In fact, Dr. Joseph noted that Plaintiff had "normal station and essentially normal gait when observed walking from waiting room to exam room without the use of any assistive devices . . ." (*Id.*). Dr. Joseph also noted that during the exam, Plaintiff was "able to climb on and off the exam table without assistance" and had a negative Romberg test. (PageID.513). On November 10, 2022, Dr. Harold Nims ("Dr. Nims") found that Plaintiff had "some difficulty with squatting and walking on her heels with the tandem gait" and "mild neuropathy in the feet." (PageID.535). But Dr. Nims also reported during that same visit that Plaintiff "ambulates with a normal gait, which is not unsteady, lurching, or unpredictable. The claimant does not require the use of a handheld assistive device. The claimant appears stable in the standing, sitting, and supine positions." (PageID.533). Dr.

Nims also found that Plaintiff "is able to stand on one leg at a time without difficulty." (PageID.534).  The ALJ reasonably cited the doctors' findings in support of her determination that Plaintiff's degenerative disc disease "warrants light exertion" with the additional limitations reflected in the RFC.  (PageID.77, 79-80).

The ALJ also recognized that Plaintiff's neuropathy caused by her diabetes mellitus and her obesity impacted the RFC.  (PageID.76, 77).  While the ALJ noted that that Plaintiff's neuropathy "may be [] worsening" in light of the "objective evidence [in the record] of diabetic neuropathy in the lower extremities," and that she suffered from obesity, the ALJ reasonably found that those impairments "warrant[] reduced standing/walking" limitations (among others) in the RFC.  (PageID.76-77).

The ALJ also considered Plaintiff's fibromyalgia, finding that the medical evidence supported a light work classification with "reduced standing/walking, and avoidance of vibration and hazards."  (PageID.77).  While there is some evidence that Plaintiff's fibromyalgia caused difficulty concentrating and fatigue, substantial evidence supports that fibromyalgia did not significantly impair Plaintiff's ability to be alert and focused.  In November of 2022, Plaintiff reported to Dr. Nims that she had been diagnosed with fibromyalgia by her rheumatologist in 2016, though she had received no specific treatment. (PageID.531).  Apparently based on her self-reported symptoms and his physical examination, Dr. Nims determined that Plaintiff had "[f]ibromyalgia with fibro fog, currently untreated."  (PageID.535).  Plaintiff also reported to a licensed psychologist Karen Marshall in November of 2022 that she "feels tired all of the time… is forgetful and has difficulty concentrating… cannot fall asleep until 4 AM…" (PageID.525).  Despite

13

Plaintiff's self-reported symptoms, the ALJ found that the fatigue, lack of concentration, and sleep disturbance was inconsistent with the medical evidence. On April 13, 2021, Nurse Practitioner Krista Gibbs found that Plaintiff was "[a]lert and orientated, no acute distress, pleasant and cooperative." (PageID.558). On March 7, 2022, Dr. Matthew Dickson found Plaintiff to be "alert, active, and in no acute distress." (PageID.506). On April 9, 2022, Dr. Joseph found Plaintiff to be "alert, active and oriented to person, place, and time," "to be in no acute distress," and with an "[a]ppropriate mood and Affect." (PageID.512). Therefore, substantial evidence supports the ALJ's conclusion that Plaintiff's fibromyalgia did not keep her from doing light work.

Plaintiff also reported that her fibromyalgia was causing significant pain. On April 9, 2022, Dr. Joseph wrote that Plaintiff "states that she has difficulty walking and climbing up the staircase on occasion, and on most days her pain level is described as a 9/10 in quality… She states that this is relieved with rest and taking Motrin and Tylenol." (PageID.512). Plaintiff also wrote in her Function Report on December 1, 2021, that she is "in constant pain walking and sitting for any length of time." (PageID.347). The RFC reflects Plaintiff's difficulty going up and down stairs, restricting Plaintiff to only climbing only "occasionally." (PageID.74). Although Plaintiff's self-reported pain level is high, the fact that conservative measures, such as rest and over-the-counter pain relievers have been effective, suggests that the pain level is manageable. And, the ALJ noted that Plaintiff's fibromyalgia showed signs of improving. For instance, in April of 2022, Dr. Joseph found 11 out of 18 tender points, which the ALJ noted is "the minimum for [a] diagnosis [of fibromyalgia]." (PageID.77, 517). The ALJ also noted, however, that in

14

November of 2022, Dr. Nims found only 4 tender points. (PageID.77, 541). Considering all of the foregoing, the ALJ's conclusion that Plaintiff's fibromyalgia didn't warrant a limitation to sedentary work is supported by substantial evidence.

Even if the light work categorization was appropriate for her ability to stand and walk, Plaintiff also argues that the lifting requirements of light work would require her to be on her feet for up to two-thirds of the workday, or 6 out of 8 hours. (ECF No. 10, PageID.701). Plaintiff argues that this is contrary to the four-hour standing and walking limitation in the RFC. (*Id.*). But Plaintiff misunderstands the guidelines. Light work involves "frequent lifting and carrying," which means "occurring from **one-third to two-thirds of the time**" and "being on one's feet *up to* two-thirds of a workday." SSR 83-10, 1983 WL 312251 at *6 (emphasis added). One-third of an eight-hour workday is 2.67 hours, which is below the four-hour standing and walking threshold set by the ALJ in the RFC. Plaintiff's RFC allows for a limited range of light work, and only those jobs that require standing and walking no more than four hours in an eight-hour workday were considered, even though Plaintiff can otherwise perform the lifting and carrying requirements of light work. (PageID.79, 110-111).

Finally, Plaintiff objects that the "ALJ's own reasoning was consistent with an individual who was limited to work at a sedentary level" because "[s]he specifically rejected medical findings that [Plaintiff] could 'frequently walk' or 'frequently stand' as being 'not well supported by the evidence…'" (ECF No. 10, PageID.702) (citing PageID.79-80). But the RFC is consistent with the ALJ's discussion of these opinions, because the RFC limits Plaintiff to less than "frequent" walking or standing. "'Frequent'

15

means occurring from one-third to two-thirds of the time." SSR 83-10, 1983 WL 31251 at *6. "'Occasionally' means occurring from very little up to one-third of the time." *Id.* Sedentary jobs involve only occasional walking and standing. 20 C.F.R. § 416.967(a). Light work "requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 416.967(b). The ALJ specifically found "frequent" standing and walking to be *beyond* Plaintiff's capabilities (PageID.79-81) ("the ability to frequently stand and frequently walk is not well supported by the evidence, including the claimant's reported limitations in these functions consistent with the combined effects of her fibromyalgia, neuropathy, obesity, and degenerative disc disease, which supports a greater limitation in the capacity for standing and walking."), but reasonably found, based on the record evidence discussed herein, a maximum of four hours of standing and walking in an eight-hour workday to be appropriate.

As the Commissioner notes, numerous courts in this district have explained that a limitation to four hours of walking does not mean a claimant can perform no light work. (ECF No. 12, PageID.722-23) (citing *Williams v. Kijakazi*, No. 2:22-cv-11279, 2022 WL 20748275, at *11 (E.D. Mich. Nov. 22, 2022) (Morris, M.J.), *report and recommendation adopted sub nom. Williams v. Comm'r of Soc. Sec.*, 2023 WL 6367681 (E.D. Mich. Sept. 29, 2023); *see also Piehl v. Comm'r of Soc. Sec.*, No. 21-cv-11066, 2022 WL 1731438, at *3-4 (E.D. Mich. May 4, 2022) (Stafford, M.J.) ("[C]ase law in this circuit does not support Piehl's contention that a four-hour limitation on walking or standing conflicts with limited light work.") (collecting cases), *report and recommendation adopted*, 2022 WL 1721446

16

(E.D. Mich. May 27, 2022). Indeed, as *Williams* explained, an "RFC limiting Plaintiff to four hours of standing or walking does not prevent her from performing a reduced but significant range of light work." *Williams*, 2022 WL 20748275, at *11. Again, as discussed above, the record evidence substantially supports the ALJ's findings as to Plaintiff's walking and standing limitations.

For all of the foregoing reasons, the Court finds that the ALJ's determination that Plaintiff was not disabled during the relevant period is supported by substantial evidence in the record.

### III.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's Motion for Summary Judgment **(ECF No. 10)** is **DENIED**, and the Commissioner's Motion **(ECF No. 12)** is **GRANTED**.

Dated: January 15, 2026  
Ann Arbor, Michigan

s/David R. Grand  
DAVID R. GRAND  
United States Magistrate Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on January 15, 2026.

s/Eddrey O. Butts  
EDDREY O. BUTTS  
Case Manager